IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00374-NYW-KAS

TYLER KELLUM and JOHN BRIDGES,
on behalf of themselves and all others similarly situated,

    Plaintiff,

v.

PREDATOR INTERNATIONAL, INC,

    Defendant.

### MOTION TO DISMISS UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Defendant Predator International, Inc. ("Defendant" or "Predator") hereby moves to dismiss the Complaint [ECF 1] filed by Plaintiffs Tyler Kellum and John Bridges ("Plaintiffs") for failure to state a claim under Rule 12(b)(6) for the only claim asserted in the Complaint.

Although not required under D.C.COLO.L.CivR 7.1(b), counsel for Plaintiffs was informed of the basis for this motion. Plaintiffs will oppose the motion.

### I.    INTRODUCTION

The only claim asserted in the Complaint alleges that the pellet weight listed on the containers for EXACT branded airgun pellets was not "exact" to the one-hundredth of a grain (unit of measure), and the language "EXACT" and "CAREFULLY SELECTED" appearing on those containers somehow constituted false advertising in violation of the Colorado Consumer Protection Act ("CCPA"). [ECF 1] at ¶¶ 13–14.

1

Plaintiffs' claim is based on the products shown on Defendant's webpage at *https://predatorpellets.com/our-pellets/*, which is cited and identified in the Complaint. [ECF 1] at ¶ 11. A copy of this webpage is submitted as Exhibit 1.

A visual inspection of the containers on the webpage cited and identified in the Complaint, however, establishes that no reasonable consumer would be misled or deceived by the language "EXACT" and "CAREFULLY SELECTED" which are printed separate and apart from the pellet weight. Ex. 1. Simply put, these terms are not associated with one another.

Plaintiffs' claim is based on the logical fallacy of contextomy, which is the selective excerpting of words from their original context to distort their meaning.

## II.     BACKGROUND

Plaintiffs have alleged false advertising based on the verbiage appearing on the packaging for certain airgun pellets as shown on Defendant's website.

### A. Plaintiffs

Plaintiffs Kellum and Bridges allege having "purchased the pellets with the reasonable expectation that the pellets would weigh the identical weight as advertised by Defendant in both in advertisements and on its pellets' container tins." [ECF 1] at ¶ 54. Even though Plaintiffs Kellum and Bridges both reside in Nevada, they nonetheless claim to be "similarly situated" with respect to the other members of the class consisting of "[a]ll consumers with the State of Utah who purchased one tin of pellets." [ECF 1] at ¶¶ 18 & 29.

### B. Defendant Sells Airgun Pellets

Defendant is a Colorado corporation that sells ammunition for air guns, namely, airgun pellets.[1] Ex. 1. An air gun is "a gun from which a projectile is propelled by compressed air." Ex. 2 (Merriam-Webster Dictionary definition).[2]

As illustrated in the chart below using images taken from Defendant's website at *https://predatorpellets.com/our-pellets/*, which is cited and identified in the Complaint ([ECF 1] at ¶ 11), Defendant sells airgun pellets in numerous shapes and sizes. Ex. 1.

   

These images show that different names, such as EXACT, SIMPLY, STRATON, and HADES, denote different pellet shapes. Ex. 1. For example, the EXACT pellet has a rounded top. The SIMPLY pellet has a flat top. The STRATON pellet has a pointed top. And the HADES pellet has a partially hollow tip.

Some containers also include the words "CAREFULLY SELECTED" below a picture of the pellet shape. Ex. 1.

---

[1] The Red Ryder BB gun from "A Christmas Story" was a type of air gun, but not one that would use the pellets at issue in this lawsuit.

[2] The Court may take judicial notice of this dictionary definition. *LaGatta v. Penn. Cyber Charter Sch.*, No. 08-1268, 2011 WL 3957294, at *5 n.4 (W.D. Pa. Sept. 7, 2011) ("A court may rely on and take judicial notice of dictionary definitions") (citing Fed. R. Evid. 201).

And, separate from the pellet name and shape, the package lists product specifications such as the weight, caliber, and number of pellets.[3] Ex. 1.

### C. The Alleged False Advertising

The only claim asserted in Plaintiff's Complaint [ECF 1] is false advertising in violation of the Colorado Consumer Protection Act (C.R.S. § 6-1-101, *et seq.*).

The Complaint alleges that the weight listed on the EXACT containers was not "exact" to the one-hundredth of a grain, constitutes false advertising in violation of the Colorado Consumer Protection Act, because the language "EXACT" and "CAREFULLY SELECTED" appeared on the containers of airgun pellets with a weight designation in grams and grains.[4] [ECF 1] at ¶¶ 13–14.

Plaintiffs also allege that they had to spend "quantifiable time" in "sorting the purchased pellets according to their actual weight" because of variation in the actual weights of each individual pellet from the weight printed on the containers. [ECF 1] at ¶ 58. Plaintiffs, however, did not state the pellet weight difference other than to suggest that it was more than "one hundredth of a grain." *E.g.*, [ECF 1] at ¶ 13. Nor did Plaintiffs allege that the pellet weight was significantly different from the listed weight in grams.

---

[3] It should be noted that Defendant is not the manufacturer of the accused EXACT pellets. The webpage cited and identified in the Complaint ([ECF 1] at ¶ 11) instead shows that they are "MADE IN CZECH REPUBLIC" by JSB. Ex. 1. The webpage also identifies "JSB" separately from Defendant "Predator."

[4] The Complaint asserts that a grain is a measure of weight that is equal to 0.0648 grams or 0.002286 ounces. [ECF 1] at ¶ 14. Thus, 0.01 grains is equal to 0.000648 grams. Put another way, one-hundredth of a grain is equal to about one-1,543th of a gram.

4

### III. DISCUSSION

#### A. Failure to State a Claim

Under Rule 12(b)(6), while accepting all well-pled facts in the Amended Complaint as true and viewed in the light most favorable to the Plaintiffs, the Court must decide whether Plaintiffs have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted); *see also Twombly*, 550 U.S. at 555 ("above the speculative level"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable").

Documents cited and relied upon in a complaint also may be relied upon as an integral part of the pleadings for a Rule 12 motion. *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1156 (D. Colo. 2012); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material."); *Shrem v. Southwest Airlines Co.*, No. 15-CV-04567-HSG, 2016 WL 4170462, at *2 (N.D. Cal. Aug. 8, 2016) (considering documents accessible through hyperlinks in

5

an exhibit attached to the complaint under the incorporation by reference doctrine). In addition, the Court may consider matters subject to judicial notice. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).

### B. No False Advertising Under the Colorado Consumer Protection Act

Whether an advertising statement constitutes an actionable misrepresentation under the Colorado Consumer Protection Act ("CCPA") requires the plaintiff to prove by a preponderance of the evidence that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business; (3) the deceptive trade practice significantly impacted the public as actual or potential consumers of the defendant's goods; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the deceptive trade practice caused actual damages or losses to the plaintiff. *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011) (citation omitted); *Renfro v. Champion Petfoods U.S., Inc.*, 25 F.4th 1293, 1301 (10th Cir. 2022).

The Colorado Supreme Court has noted that "a deceptive trade practice" under the CCPA requires a false statement of **fact** that is **material** such as to induce the recipient to act. *Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). But a misrepresentation is only actionable when made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Id.* (citing *Parks v. Bucy*, 72 Colo. 414, 211 P. 638, 639 (1922)).

6

Moreover, statements of opinion are not actionable. *Renfro*, 25 F.4th at 1302. This includes "puffery" or "those vague generalities that no reasonable person would rely on as assertions of particular facts." *Id.* (quoting *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009)); see also *Giles v. Inflatable Store, Inc.*, No. 07-CV-00401-PAB-KLM, 2009 WL 961469, at *3 (D. Colo. Apr. 6, 2009) ("general statements of opinion typically constitute protected puffery"). For example, "[t]he term "quality" is vague, entirely subjective, and a bare assertion of product superiority." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393 (8th Cir. 2004); see also *Bimbo Bakeries USA, Inc. v. Sycamore*, 39 F.4th 1250, 1269 (10th Cir. 2022) ("'quality,' is quintessential puffery"); *see also Shaw v. Gen. Motors Corp.*, 727 P.2d 387, 391 (Colo. App. 1986) (concluding that GM's representation that "Chevy's business is providing the right truck for your business" was not actionable because it was "merely [GM]'s opinion or commendation of [its] goods" (citation and internal quotation marks omitted)). "These kinds of statements cannot form the basis for any claim of misrepresentation of fact." *Renfro*, 25 F.4th at 1302 (discussing "protected puffery").

So, the issue here is whether a reasonable consumer would accept or treat the statements printed on the containers as statements of fact that are material, rather than as statements of opinion or puffery. Accordingly, each of three alleged false advertising statements (namely "EXACT"; "CAREFULLY SELECTED"; and the listed pellet weight to the one hundredth of a grain) will be addressed in turn.

7

### 1. "EXACT"

The Complaint alleges that each of the EXACT brand of airgun pellets sold by Defendant containers was not "exact" to the one-hundredth of a grain, and thus constituted false advertising in violation of the Colorado Consumer Protection Act. [ECF 1] at ¶¶ 13–14.



But Plaintiffs implausibly allege this single word requires a specific precise measurement of weight when it does not. Rather, the container packaging uses the word "EXACT" in very large letters as a non-descriptive trademark for pellets having a rounded top shape. Ex. 1. Defendant's website also includes pellets sold under different trademarks (such as SIMPLY, STRATON, and HADES) to denote different pellet shapes. For example, in addition to the EXACT pellet having a rounded top—the SIMPLY pellet has a flat top, the STRATON pellet has a pointed top, and the HADES pellet has a partially hollow tip.

That a reasonable consumer would not interpret the word "EXACT" as describing the weight of the pellet is reinforced by the fact that the EXACT mark is set off away from the product specifications including the weight in both grams and grains.

To the extent that the EXACT mark would be construed to have the merely descriptive meaning regarding a feature of the pellets, as alleged by Plaintiffs—the question then becomes: "What does 'exact' modify?"

Exact shape? (rounded top pellet).

Exact count? (500 pieces).

Exact caliber? (for example, .177 caliber).

While the above examples show the word "exact" being used as an adjective, the word "exact" also has a different meaning when used as a verb ("to call for forcibly or urgently and obtain")—such as in to "exact a toll" on the target of the pellet with the rounded top.[5] Ex. 3 (Merriam-Webster Dictionary definition).

Thus, given these myriad meanings, an ordinary consumer would not interpret the EXACT mark as specifically requiring each pellet be "exact" to the one-hundredth of a grain of the weight listed on the packaging. See *Bimbo Bakeries USA, Inc. v. Sycamore*, 39 F.4th 1250, 1266–67 (10th Cir. 2022) (concluding that use of the word "local" in advertising does not generate legal liability because the word "local," by itself, "can connote a host of ideas"). Indeed, it is especially unwarranted where the webpage cited in the Complaint shows that the EXACT, SIMPLY, STRATON, and HADES marks are used to denote different pellet shapes. And even if an ordinary consumer were to only encounter the EXACT brand of pellets, the meaning of the word "exact" in context of the entire packaging represents "vague generalities that no reasonable person would rely on as assertions of particular facts." *Renfro*, 25 F.4th at 1304.

---

[5] The Court may take judicial notice of this dictionary definition. Fed. R. Evid. 201; see also *LaGatta*, 2011 WL 3957294, at *5 n.4.

### 2.  "CAREFULLY SELECTED"

The Complaint also alleges that the words "CAREFULLY SELECTED" on the EXACT containers creates the inference and understanding that a selection process "with a stringent degree of precision [was employed] to ensure . . . a specific weight measure in grains that was specific to the one hundredth of a grain." [ECF 1] at ¶ 14 n.3. But, in context of the actual product packaging at issue, Plaintiffs' allegations are not supported because these packaging statements mean something different.



On the accused packaging, the words "CAREFULLY SELECTED" appear underneath a picture showing the pellet's shape. Ex. 1. This suggests that the care being exercised is in selecting pellets that conform to the pellet shape shown on the packaging. Thus, the words "carefully selected" in context of the entire packaging is unrelated as to whether each pellet is within one hundredth of a grain to the weight listed on the container packaging.

In any event, a reasonable consumer would view the words "CAREFULLY SELECTED" appearing below the pellet's shape as puffery regarding quality control with respect to the general shape of the pellets, and "not a specific representation of fact subject to measure or calibration." *Park Rise*, 155 P.3d at 436. No reasonable consumer would interpret this phrase on the container to mean that each pellet will weigh precisely the same to the one hundredth of a grain.

10

Moreover, the term "carefully" is inherently subjective and a "vague generality" that would not mislead a reasonable consumer. *Renfro*, 25 F.4th at 1304 (affirming that "Fresh Regional Ingredients" was either not empirically verifiable or unactionable puffery). For example, the Tenth Circuit in *Renfro* explained that vague generalities such as "fresh" and "regional" are not subject to measurement and lack a "specific representation of fact subject to measure." *Id.* (citing *Park Rise*, 155 P.3d at 436); *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1176–77 (D. Colo. 2015) (focusing on whether the accused statements were "specific, measurable claims that can be evaluated as true or false"). Here as well, no reasonable consumer would find the words "CAREFULLY SELECTED" to be misleading because it is unactionable puffery that lacks a specific representation of fact regarding the criteria or the amount of care to be exercised in selecting the pellets.

### 3. Weight of Each EXACT Airgun Pellet

The Complaint alleges that the EXACT brand pellets are "materially inaccurate as to the actual weight of the pellets." [ECF 1] at ¶ 50. Specifically, the Complaint alleges that the EXACT brand of pellets do not all weigh within one hundredth of a grain of the weight listed on the containers for those pellets. [ECF 1] at ¶¶ 15–16.

The Complaint, however, makes no such allegation against any of the other airgun pellets (*e.g.*, SIMPLY, STRATON, and HADES) that are sold on Defendant's website which was cited in the Complaint; even though weights to one hundredth of a grain also are printed on the containers for those differently named pellets. Ex. 1.

Having made no allegation that the variance in the actual weights of these other differently-named pellets from their listed weight was material, even Plaintiffs apparently recognize that consumers expect some variance in the actual individual weight of such commercially manufactured pellets from their listed weight.

Also, as previously discussed, Defendant's advertising did not say that each manufactured EXACT pellet would have no variance from the listed weight to the one-hundredth of a grain, or to the one-thousandth of a gram. *Renfro*, 25 F.4th at 1304 ("Nor does Champion say on the packaging that the dog food is free from filler.").

Furthermore, the accused packaging lists weights in both grams and grains. For example, "0,475 g / 7,33 gr." Yet the Complaint only alleges a misrepresentation with



respect to the listed weight in grains. As previously noted, the Complaint alleges that 0.01 grains is equal to 0.000648 grams—which also means that 0.001 grams is equal to 0.0154 grains. [ECF 1] at ¶ 14. Accordingly, because of this difference in the units of measurement, it is possible to measure the weight of a pellet to be within the listed one-thousandths of a gram, but not within the listed one-hundredth of a grain.[6]

Plaintiffs have alleged no plausible basis to find false advertising under the CCPA based on an unidentified variance in the weight of the pellets in grains or grams.

---

[6] Also, because the pellets were made in the Czech Republic in Europe, which uses the metric system, the pellets were likely measured in grams, with the listed grain weight arrived at mathematically using a conversion formula.

## IV. CONCLUSION

Based on selectively excerpting words such as "EXACT" and "CAREFULLY SELECTED" from their original context on the accused packaging to distort their meaning, Plaintiffs' claim exemplifies the logical fallacy of contextomy. When viewed in context, there is no false advertising, and the CCPA claim should be dismissed with prejudice.

Date:  March 15, 2024

Respectfully submitted,

  *s/ James Juo*
James Juo
THOMAS P. HOWARD, LLC
842 W. South Boulder Rd., Suite #100
Louisville, CO 80027
Phone: (303) 665-9845
Email: *jjuo@thowardlaw.com*

*Counsel for Defendant*